UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. AGUIRRE,<br><br>                            Plaintiff,<br><br>v.<br><br>UNITED STATES NUCLEAR REGULATORY COMMISSION,<br><br>                           Defendant. | Case No.: 3:22-cv-00080-JAH-BLM<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION TO DISMISS, OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**<br>**(ECF NO. 5)** |

### I.    INTRODUCTION

Pending before the Court is Defendant United States Nuclear Regulatory Commission's ("Defendant" or "NRC") motion to dismiss Plaintiff's complaint, or alternatively, for summary judgment ("Motion"). (ECF No. 5). The Motion has been fully briefed. (ECF Nos. 5, 6, 7, 12, 13). Having considered the parties' submissions, the Court **GRANTS** in part, and **DENIES** in part Defendant's Motion.

### II.    PROCEDURAL BACKGROUND

In 2019, Plaintiff Michael J. Aguirre ("Plaintiff") filed three lawsuits in the Southern District of California challenging Defendant's response to four of Plaintiff's Freedom of Information Act ("FOIA") requests. (ECF No. 5-1 at ¶ 3). In each of those lawsuits, judgment was granted in favor of Defendant. *Id.* In a consolidated appeal, the Ninth Circuit

affirmed judgment in favor of Defendant. *Id.*

On January 20, 2022, Plaintiff filed a complaint against Defendant for declaratory judgment and production of FOIA records. (ECF No. 1). On March 31, 2022, Defendant filed the instant Motion. (ECF No. 5). On June 1, 2022, Plaintiff filed an opposition to Defendant's Motion, along with a request for leave to amend the complaint in the event the Court determines deficiencies with Plaintiff's claim. (ECF No. 6). In addition, Plaintiff filed a request for judicial notice of the Ninth Circuit's opinion in *Aguirre v. United States Nuclear Regulatory Commission,* Ninth Circuit Case Nos. 20-55177, 20-55179, and 20-55487 in support of Plaintiff's opposition to Defendant's Motion. On June 8, 2022, Defendant filed a reply. (ECF No. 7).

### III. FACTUAL BACKGROUND[1]

Defendant is a federal agency responsible for inspecting nuclear plants and enforcing safety regulations to ensure the protection of people and the environment from uses of radioactive material. (ECF No. 1 at ¶ 3). As a federal agency, Defendant has the duty to comply with record production laws under FOIA under 5 U.S.C § 552. *Id.*

The San Onofre Nuclear Generating Station ("SONGS") stores nuclear waste and is one of the sites Defendant is charged with overseeing. *Id.* at ¶ 4. On August 3, 2018, during SONGS' process for storing nuclear waste, a safety violation occurred with the misalignment of a canister storing approximately 100,000 pounds of nuclear waste. *Id.* at ¶ 8. Under 10 C.F.R § 72.75(d)(1), SONGS' plant operators were required to report this event to Defendant within 24 hours of its occurrence, but this event was not reported by SONGS' plant operators to Defendant within 24 hours. *Id.* at ¶ 10. On August 6, 2018, Defendant's regional administrator, Scott Morris, allegedly received an informal call from the SONGS operator in which the event was explained. *Id.* at ¶ 11. Defendant's regional administrator then began daily communications with the SONGS facility operator, and an

---

[1] The Court recites the allegations in the pleadings for purposes of this Motion, and it is not making any findings of fact.

agreement was reached to cease all fuel loading operations at SONGS. *Id.* In contradiction, Defendant's official, Lee Brookhart of Region IV, alleges an informal call from SONGS explaining the event was made to him alone on August 6, 2018. *Id.* at ¶ 12.

As a result of the admissions made by the SONGS operator, as well as Defendant's Scott Morris and Lee Brookhart, Plaintiff submitted a FOIA request to Defendant on August 28, 2021 seeking:

> [A]ll records of communications related to the August 3rd event between [Defendant's] agents and agents of the "facility operator" regarding the August 3rd event, for the period between August 3, 2018 and September 14, 2018. *Id.* at ¶ 13.

Defendant admitted it received the request on August 30, 2021 and assigned it number NRC-2021-000235. *Id.* at ¶ 14.

On September 7, 2021, Defendant informed Plaintiff that there were no additional records responsive to Plaintiff's August 28, 2021 request that had not already been provided to Plaintiff as a result of Plaintiff's previous FOIA requests to Defendant. (ECF No. 5 at 7). Over the past several years, Plaintiff has submitted twenty-five FOIA requests to Defendant related to SONGS. *Id.* at 6.

On September 29, 2021, Plaintiff filed an administrative appeal to Defendant's FOIA response, arguing that Defendant (1) failed to provide all responsive records, (2) failed to conduct a proper search for records, and (3) improperly limited the scope of the search. (ECF No. 1 at ¶ 16; ECF No. 5-1 at ¶ 6). As a result of a new search conducted by Region IV staff, thirteen additional pages of responsive documents were found. *Id.* The supplemental search included the Defendant's Allegation Management System ("AMS") and its electronic files maintained on a SharePoint site. *Id.* at ¶ 7. Consequently, Plaintiff's appeal was granted by Defendant's Chief Information Officer (CIO) and remanded to its FOIA Office. *Id.*

On November 17, 2021, Defendant responded to Plaintiff's appeal. (ECF No. 1 at ¶ 44). Of the thirteen pages of responsive documents, Defendant's FOIA Office released five pages in their entirety. (ECF No. 5-1 at ¶ 8). An additional three pages were released

in part after redacting the names and contact information of non-governmental employees pursuant to Exemption 7(C) of FOIA, as well as after redacting a link to Defendant's internal network pathway pursuant to Exemption 7(F) of FOIA. *Id.*

The remaining five pages were withheld in their entirety pursuant to Exemption 4 of FOIA. *Id.* at ¶ 9. These five pages are comprised of two documents. *Id.* The first document, which is three pages long, is a draft Field Condition Report ("FCR") created by Holtec dated August 6, 2018. *Id.* The second document, which is two pages long, is an Action Report ("AR") created by Southern California Edison. *Id.*

On December 6, 2021, Plaintiff appealed Defendant's decision to withhold records. (ECF No. 1 at ¶ 18). On January 5, 2022, Defendant denied Plaintiff's second appeal. *Id.* at ¶ 19.

## IV. LEGAL STANDARD

### A. FOIA

"FOIA 'was enacted to facilitate public access to Government documents.'" *Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1116 (9th Cir. 2010) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "Government transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 769–70 (9th Cir. 2015). Accordingly, there is a "strong presumption in favor of disclosure." *Id.* at 772. "FOIA mandated that federal agencies 'disclose records on request, unless they fall within one of nine exemptions.'" *Ctr. for Investigative Reporting v. United States Dep't of Just.*, 14 F.4th 916, 923 (9th Cir. 2021) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)). At issue in this case are FOIA Exemptions 4, 7(C), and 7(F).

### B. Motion to Dismiss & Motion for Summary Judgment in FOIA Cases

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, all material

factual allegations of the complaint are accepted as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). While the Court generally only considers the complaint on a motion to dismiss, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), Defendant has moved in the alternative for summary judgment, where the Court may consider materials outside the complaint. Fed. R. Civ. P. 56. And in the FOIA context, "[c]ourts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004).[2]

## V. DISCUSSION

Plaintiff brings his claim under FOIA, 5 U.S.C. § 552, to "compel production under a pair of FOIA requests." (ECF No. 1 at 3). Plaintiff argues that Defendant's search for documents pursuant to those requests was unreasonable, and that Defendant inappropriately applied exemptions to its productions to Plaintiff. There are two primary issues: first, was Defendant's search adequate and reasonable; and second, did Defendant properly apply FOIA exemptions to their supplemental productions? The Court addresses both issues in turn.

### A. Adequacy and Reasonableness of Defendant's Search

When responding to a FOIA request, "the government must show beyond material doubt that its search was adequate." *Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 910 (9th Cir. 2022). Adequacy is measured "'by a standard of reasonableness, construing the facts in the light most favorable to the requestor.'" *Id.* (quoting *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995)). Searches are "not inadequate just because [they] fai[l] to turn up a few isolated documents." *Id.* (citation and internal quotations omitted). The "heavy burden" of demonstrating adequacy and reasonableness sits with the government, which they "may meet . . . by

---

[2] Overruled in part on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

providing 'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Id.* (quoting *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770 (9th Cir. 2015)).

Here, Defendant conducted two searches in response to Plaintiff's FOIA request, both of which Plaintiff contends were inadequate and unreasonable.

    a.  <u>Defendant's Initial Search</u>

Plaintiff argues that Defendant's initial search, where Defendant stated that there were "no additional records", was inadequate and unreasonable because (1) the circumstances surrounding the event in question indicated the presence of additional records; (2) Defendant unreasonably limited its first search to the initial, informal call on August 6, 2018 between Defendant and the facility operator; (3) despite Plaintiff's request seeking all records of communication related to the August 3rd event from August 3, 2018 to September 14, 2018, Defendant responded to Plaintiff's FOIA request by stating there were no additional records as the individuals who participated in the initial call did not "memorialize in writing their respective calls"; and (4) Defendant failed to sufficiently describe its search for records. (ECF No. 6 at 13, 14). Defendant contends it "reasonably determined that the documents in its possession . . . had already been provided to Plaintiff." (ECF No. 5 at 11). Defendant further argues that "even if [their] initial response to [the request] was incomplete, there is no evidence that [its] search efforts were unreasonable or conducted in bad faith." *Id.*

Though Defendant argues that it "already responded to NRC-2019-000243 and NRC-2019-000343, in which Plaintiff requested records related to the August 3rd 'incident' over a much broader timeframe[,]" (ECF No. 5 at 7, n.1), this mere reference to prior productions fails to meet the "heavy burden" imposed on the government by FOIA requests. *See Inter-Coop. Exch.*, 36 F.4th at 910.

On its face, Plaintiff's request appears to request a broader subset of documents than those previously provided. NRC-2019-000243 requests records regarding independent spent fuel storage installation that were made or submitted by Southern California Edison, Holtec, or other San Onofre subcontractors to Defendant, or records that were produced as

a result of Defendant's internal activity. (ECF No. 5 at 7). NRC-2019-000343 requests all records of communication between the Southern California Edison representative(s) and Defendant's representative(s) who were part of the initial call. *Id.* at 7, 8. Unlike the two prior requests, Plaintiff's instant FOIA request asks for all records of communication between Defendant and San Onofre regarding the August 3rd event, not just those records submitted by San Onofre to Defendant, and not just those records limited to the representatives involved in the initial, informal call on August 6, 2018. *Id.* at 7.

      b. <u>Defendant's Supplementary Search</u>

Having determined that, for purposes of the instant Motion, Defendant has not demonstrated the adequacy and reasonableness of its initial search, the Court next addresses whether the supplementary search was sufficiently reasonable. Plaintiff argues that Defendant's supplementary search was inadequate and unreasonable because (1) Defendant limited its inquiry to those individuals who have motive not to disclose the contents of such communications; and (2) Defendant excluded relevant phone logs, e-mail, and other types of communication records in both its initial and supplemental search. (ECF No. 6 at 15).

Defendant, on the other hand, contends that its search was adequate and reasonable because it acted in good faith. (ECF No. 5 at 11). Had Defendant been acting in bad faith, Defendant argues, it would have summarily rejected Plaintiff's administrative appeal, instead of re-doubling its efforts to search for responsive documents. *Id.* Moreover, despite Plaintiff's complaint that no phone records were located during the supplemental search, Defendant contends it had "double-checked" with the officials Plaintiff identified, and further confirmed that the identified individuals' phone calls were neither recorded nor memorialized in writing. (ECF No. 7 at 4). Defendant thus contends that, even if imperfect, its search was reasonable. *Id.*

"[C]onstruing the facts in the light most favorable to the requestor[,]" it is difficult to conclude that Defendant's search was reasonable. *Inter-Coop. Exch.*, 36 F.4th at 910. The parties have agreed that several phone calls occurred between Defendant and the

facility operator between August 3, 2018 and September 14, 2018, following Defendant's Representative Scott Morris' decision to begin daily communications with the facility operator during the initial, informal call on August 6, 2018.  (ECF No. 1 at ¶ 11).  With that in mind, Defendant's failure to produce any phone records for the calls in question is a glaring omission.  Those phone records are clearly within the scope of the request, and Defendant's declarant has not testified that there are no relevant phone records.  Defendant argues that it "double-checked" and confirmed that certain calls were neither recorded nor memorialized in writing, but the absence of a written memorialization of the content of these calls has no bearing on whether Defendant has to produce *phone records*,[3] which should be generated irrespective of a written summary or record of the content of the calls.  Defendant does not clearly state that such phone records do not exist or are not in their possession or control; it does not otherwise explain why it has failed to produce these phone records; and it also fails to explain why the process it employed to search for documents would not have captured those records.

The Court recognizes that government agencies do not have an "obligation under FOIA to retrieve . . . phone records from [service providers] . . . and that . . . phone records [in the possession of service providers] did not qualify under FOIA's statutory definition of records, which covers information 'maintained for an agency by an entity under Government contract, for the purposes of record management[.]'" *Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1053 (9th Cir. 2010) (quoting 5 U.S.C. § 552(f)(2)(B)).  But, unlike *American Small Business League*, it is not "undisputed that [the

---

[3] The Court infers that Defendant's claim that it "double-checked" to confirm that the identified individuals' phone calls were neither **recorded** nor memorialized in writing, (ECF No. 7 at 4), means that Defendant confirmed that there were no written summaries of the content of the calls or audio recordings of the call.  To the extent that this inference is misplaced, and Defendant intended that statement to include regular phone records, Defendant may submit a motion to supplement the record, accompanied by an affidavit describing the absence of such records.

agency] did not actually possess the records . . . and . . . had no obligation either to retain the records or to seek the records once they were no longer in its possession." *Am. Small Bus. League.*, 623 F.3d at 1053. Here, construing the facts in the light most favorable to Plaintiff, it may be that Defendant has phone logs or records in their possession or control, which they may have received from a service provider. Those records or logs should have been produced to Plaintiff; or if they do not exist, Defendant's declarant should either say so, or describe the process by which they searched for, and failed to locate, such records.

Defendant has not provided sufficient evidence in the instant Motion for the Court to find the search reasonable. Accordingly, the Court **DENIES** Defendant's request for dismissal and permits Plaintiff's complaint to proceed as to the adequacy and reasonableness of the search.[4]

### B. Application of Exemptions to Supplemental Production

During its supplementary search, Defendant identified additional documents for production, to which they applied several redactions or withholdings based on statutory exemptions to an agency's production burden under FOIA. There are three exemptions at issue here: first, three of the thirteen pages were released after redactions allegedly applied pursuant to Exemption 7(C); second, a link was redacted pursuant to Exemption 7(F); and third, five pages were withheld in their entirety under Exemption 4. The Court finds that these exemptions were appropriately exercised over the supplementary documents and discusses each in turn. As the following discussion demonstrates, the Court also finds that Defendant complied with its duty to reasonably segregate responsive documents by redacting and producing where possible, and withholding in full when necessary.

///

---

[4] To be clear, the Court is not making a final ruling on the adequacy and reasonableness of the search, as Plaintiff has not filed a cross-motion for summary judgment. The Court is denying Defendant's motions seeking dismissal, but subject to a motion to supplement the record.

    a. <u>Exemption 7(C)</u>

"Exemption 7(C) allows for nondisclosure of documents compiled for law enforcement purposes where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Church of Scientology Int'l v. I.R.S.*, 845 F. Supp. 714, 721 (C.D. Cal. 1993). Courts "must balance the privacy interests at stake against the public interest in disclosure", and the "government agency bears the burden of establishing a privacy interest." *Id.* (citing *Congressional News Syndicate v. Department of Justice*, 438 F. Supp. 538, 542 (D.C. Cir. 1977)). The "balance tilts in favor of disclosure." *Church of Scientology Int'l*, 845 F. Supp. at 721.

    i. *Privacy Interests of the Non-Governmental Employees*

Plaintiff argues that Exemption 7(C) does not apply to Defendant's responsive documents because the FOIA request is not seeking personal information about Defendant's representatives and instead seeks the identities of those individuals who were communicating with the nuclear plant operator regarding the August 3, 2018 event. (ECF No. 6 at 17). Defendant claims to have applied Exemption 7(C) to redact the names and contact information of non-governmental employees, who are thereby entitled to protection from an unwarranted invasion of their personal privacy. (ECF No. 5 at 12). Defendant contends that the disclosure of these private citizens' information would be an unwarranted invasion of their personal privacy and could subject them to potential harassment. *Id.*

For purposes of Exemption 7(C), "the concept of personal privacy . . . is not some limited or cramped notion", and instead "encompasses a broad range of concerns relating to an 'individual's control of information regarding his or her person' . . . and an 'interest in keeping personal facts away from the public eye.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 974 (9th Cir. 2009) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165 (2004)). As Defendant notes, courts have generally upheld the redaction of personal information in FOIA cases. (ECF No. 5 at 13). Defendant cites to *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (upholding redaction of employees' names from a report on a forest fire prepared by the

Forest Service); *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122 (7th Cir. 2003) (upholding redaction of identities of individuals who complained to the FTC about illegal business activity); *Strout v. U.S. Parole Comm'n.*, 40 F.3d 136 (6th Cir. 1994) (upholding redaction of identity of individuals who wrote to the Parole Commission opposing parole). *Id.* Moreover, the "potential for unwanted contact by third parties, including the plaintiff, media entities, and commercial solicitors" is a protected privacy interest in the Ninth Circuit. *Lahr*, 569 F.3d at 975-76.

## ii. The Public Interest in Disclosure

The Court must then balance the aforementioned privacy interests with the public's interest in disclosure. Where relevant privacy interests exist, "the requester must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and that the information is likely to advance that interest." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 158 (2004).

Plaintiff argues that there is a strong public interest in favor of disclosure because the identities of the non-governmental employees at issue may reveal something about Defendant's conduct, especially given Defendant's "seemingly inconsistent messages" regarding who was communicating with the facility operator about the event. (ECF No. 6 at 17). Defendant contends that Plaintiff's offered public interest is speculative, and neither specific nor significant. (ECF No. 7 at 5). The Court is inclined to agree.

Because (1) courts have generally upheld the redaction of personal information, (2) the potential for unwanted contact by third parties is a protected privacy interest, and (3) Plaintiff's proffered public interest is not sufficiently specific, the Court finds that the public interest is not specific or significant enough to justify disclosure.

### b. Exemption 7(F)

Exemption 7(F) applies directly to security concerns where information in law enforcement records may "endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Here, the Government seeks to apply redactions to a hyperlink to a document under Exemption 7(F) because disclosure would present a significant

cybersecurity threat. (ECF No. 5 at 13, n.3). Defendant explains that the redacted information is a link to Defendant's governmental internal network pathway and argues that the public disclosure of this internal network pathway would present a significant opportunity for hackers to gain information about the agency's internal data, organization, and processes. (ECF No. 7 at 5). Defendant contends that this could have dangerous life and physical safety impacts, especially for licensee information. *Id*. Plaintiff, in turn, argues that Defendant applied Exemption 7(F) to what appears to be a name of a document, which cannot reasonably fall within the scope of 7(F). (ECF No. 6 at 17). The Court finds that Defendant's redaction under 7(F) was appropriate, as public disclosure of the Government's internal network pathways and the resultant cybersecurity risks fall well within the scope of Exemption 7(F).

      c. <u>Exemption 4</u>

Exemption 4 protects "'matters that are [] trade secrets and commercial or financial information obtained from a person and privileged and confidential.'" *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (quoting 5 U.S.C. § 552(b)). In the Ninth Circuit, the "government agency must demonstrate that the information it sought to protect is '(1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential.'" *Watkins*, 643 F.3d at 1194 (citation and internal quotation marks omitted). Because the first two requirements do not appear to be in serious dispute, the analysis turns on whether these documents are privileged and confidential. While FOIA does not define "confidential," federal case law provides some insight. First, the Supreme Court has held that "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). Second, the Ninth Circuit has stated that Exemption 4 "is meant to protect information that a private individual wishes to keep confidential . . . but reveals to the government under the express or implied promise by the government that

the information will be kept confidential." *Gen. Servs. Admin. v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969).

Here, Defendant applied Exemption 4 to withhold five pages of documents received from Holtec and Southern California Edison. It argues that these pages are confidential because they were not created by Defendant and instead provided to it under an assumption of confidentiality, and that Defendant confirmed as much after consulting with the third parties. (ECF No. 5 at 14).

Plaintiff argues that Defendant has provided no basis that the redacted documents are customarily and actually treated as private, nor that they were provided under an assurance of privacy, as the email that was produced shows the two documents attached ("FCR" and "AR") does not make any mention that the information was provided to Defendant as confidential. (ECF No. 6 at 18). Plaintiff further argues that the fact that Defendant did not create the records does not make them *ipso facto* confidential, and that Defendant's decision to apply Exemption 4 to "proprietary" documents is inconsistent with the standard articulated by the Supreme Court. *Id.*

The Court finds that Exemption 4 was appropriately applied to the documents. First, though the relevant cases may not use the specific word "proprietary", that documents are proprietary obviously suggest that they are, or should be, customarily and actually treated as private. Moreover, Defendant confirmed the confidential nature of the documents after consulting with the documents' creators. That the cover email attaching the documents does not, clearly on its face, indicate the confidential nature of the documents does not mean they are not so, as confidential documents are those that are provided "to the government under the express or ***implied*** promise by the government that the information will be kept confidential." *Benson*, 415 F.2d at 881 (emphasis added). Based on the representations made by Defendant's declarant, coupled with Defendant's confirmation with the document providers, the Court finds that the withheld documents are confidential documents within the scope of Exemption 4.

///

### d. Necessity of a *Vaughn* Index

Plaintiff next argues that the affidavit submitted by Defendant is "far from the *Vaughn* Index required to assist a district court in its *de novo* assessment of the agency's decisions." (ECF No. 6 at 16). More specifically, Plaintiff contends Defendant's declaration fails to state its search parameters, including the search terms used, the date range, and if there were any other searches outside the system Defendant used to find daily communications or records related to the informal agreement between Defendant and the facility operator. *Id*. Plaintiff also raises other concerns before concluding that Defendant's declaration does not have the required specificity, and that the Court should therefore require Defendant to provide an adequate *Vaughn* Index. *Id*.

Defendant, in turn, argues that a separate *Vaughn* Index is not required in this case because the information supplied in its supporting declaration is sufficient for the Court to evaluate the application of Exemption 4. (ECF No. 5 at 14, 15). Defendant contends that because only two documents, comprising a total of five pages, were withheld, the information supplied in its supporting declaration satisfies any obligation to provide a separate *Vaughn* Index. (ECF No. 5-1 at ¶ 9).

*Vaughn* Indices may vary in form, and "are not appropriate in all FOIA cases." *Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996). "Because the court and the plaintiff do not have the opportunity to view the documents themselves, the submission must be detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption." *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004) (citation and internal quotation marks omitted).[5]

Here, the Court finds that it has sufficient information to evaluate the documents at issue based on the parties' submissions, and further finds that Defendant's affidavit sufficiently "establish[es] that the requested documents should not be disclosed", leading

---

[5] Overruled in part on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

the Court to hold that "a *Vaughn* index is not required." *Minier*, 88 F.3d at 804. Accordingly, Plaintiff's request for a separate or more specific *Vaughn* Index is denied.

## VI. CONCLUSION

Having reviewed the submissions of the parties, the Court hereby FINDS and ORDERS:

1. Defendant's Motion to Dismiss, or the Alternative, for Summary Judgment, is **DENIED** in part and **GRANTED** in part.
2. Defendant's request to dismiss Plaintiff's claims regarding the adequacy and reasonableness of the search is **DENIED**, and those claims will proceed.
3. Defendant's request to dismiss Plaintiff's claims regarding the application of the exemptions is **GRANTED**. Plaintiff's claims regarding the application of Exemption 7(C) are dismissed without prejudice. Plaintiff's claims regarding the application of Exemptions 4 and 7(F) are dismissed with prejudice.
4. Plaintiff is given leave to file an amended complaint within forty-five (45) days of the filing of this order, or may otherwise elect to proceed with the surviving claims. **IT IS SO ORDERED.**

DATED: March 6, 2023

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE